**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **NATHANIEL PROCTOR,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 5:12-CV-342-HL-CHW** |
| | : | |
| **STATE OF GEORGIA, by and through** | : | **Proceedings Under 42 U.S.C. §1983** |
| **SAM OLENS, Attorney General,** *et al.,* | : | **Before the U.S. Magistrate Judge** |
| **Defendants.** | : | |
| _____ | : | |

## RECOMMENDATION

Before the Court is the Motion to Dismiss filed by Defendants Sam Olens, Brian Owens, Lisa Pratt, Carl Humphrey, Doug Underwood, Nathan Handberry, Vanessa Butts-Hawkins, Richard Trawick, Johnathan Brown, Ike Akuwanne, and Sharon Hogan.[1] Doc. 21. In the Motion, Defendants argue that Plaintiff Nathaniel Proctor's complaint should be dismissed because of insufficient service of process, lack of personal jurisdiction, Eleventh Amendment immunity, and qualified immunity. Defendants also argue that Plaintiff fails to state a claim upon which relief may be granted under federal law and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining Georgia state law claims. For the reasons stated below, it is **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

The above-styled case arises out of a physical altercation between two inmates and the medical treatment provided to one of those inmates after the attack. On August 23, 2012, Plaintiff Nathaniel Proctor filed his original complaint with six exhibits attached thereto pursuant to 42 U.S.C. § 1983. Doc. 1. On October 23, 2012, Plaintiff filed his first amended complaint

---

[1] The Clerk is instructed to amend the docket to identify Terressa Butts-Hawkins by her correct name, which is Vanessa Butts-Hawkins.

with eight exhibits attached thereto. Doc. 24. In his first amended complaint, Plaintiff named the State of Georgia, the Georgia Department of Corrections, the Georgia Department of Administrative Services, eight named individuals affiliated with Baldwin State Prison, and "John Does 1-10" as Defendants. Id. at 1-2. Plaintiff also named inmate Carlos Paris as an additional Defendant later in his first amended complaint. Id. at 16.

According to the first amended complaint, on December 3, 2010, Plaintiff was attacked by inmate Paris while both men were incarcerated at Baldwin State Prison. At the time of the attack, Plaintiff was working as an orderly in the lockdown unit. Officer Trawick and Officer Brown were working in the lockdown unit as well. Prior to the attack, neither Officer Trawick nor Officer Brown adhered "to applicable policies, procedures, and rules governing the transfer of prisoners." Id. at 19. Officer Trawick requested that the control room operator open the door to cell number six without "handcuff[ing] either inmate" or "hav[ing] a second officer at the door." Id. Inmate Paris, who was not handcuffed before the cell door opened, left the cell and attacked Plaintiff, "striking him repeatedly about his head, eyes, and face." Id. Officer Trawick did not stop the attack,[2] and Plaintiff suffered injuries, including, "broken and crushed" bones around his left eye and one eye "fall[ing] 7 millimeters out of its socket." Id. at 20.

After the attack, Plaintiff went to the prison medical center where his medical condition was evaluated by an unidentified nurse. The completed nursing assessment, which Plaintiff both excerpts in the body of his first amended complaint and attaches as an exhibit thereto, stated that Plaintiff had been "hit by another inmate" approximately ten minutes ago and that Plaintiff had experienced a "trauma to [left] eye." Doc. 24 at 21; Doc. 24-5. The completed nursing

---

[2] The incident report completed after the physical altercation by Officer Trawick, which Plaintiff both excerpts in the body of his first amended complaint and attaches as an exhibit thereto, seems to contradict Plaintiff's allegation that Officer Trawick failed to intervene in the attack as it states in pertinent part that: "I called 10-10 on my radio. I got between the two and told inmate Paris to go back to his cell and he complied." Doc. 24 at 20-21; Doc. 24-3.

assessment further noted that there was no discharge, swelling, or redness but that Plaintiff's left pupil appeared "sluggish." Doc. 24-5. Additionally, the disposition section of the completed nursing assessment contained each the following handwritten notations: "send to ER," "return to medical if problems develop," "1 laceration noted under [left] eye – cleaned [affected area]," "avoid touching [affected area]," "ice pack to [affected area] x 24 [hours]," "report any discomfort to medical/security" and "HX of trauma to [left] eye." Id. Although the disposition section of the completed nursing assessment stated "send to ER," Plaintiff was not sent to the emergency room immediately. Doc. 24 at 22. Instead, Plaintiff was escorted back to his cell.

Two days later, on December 5, 2010, Plaintiff was transported from Baldwin State Prison to the emergency room at Oconee Regional Medical Center. At Oconee Regional Medical Center, Plaintiff's medical condition was evaluated again, and a CT scan was performed. When Plaintiff went to the emergency room two days after the attack, he had "blood and discharge leaking from his left eye," and his left eye had "swollen shut." Id. at 22. In addition, Plaintiff reported his pain levels were "an 8-10 on a 1-10 scale." Id. During his visit to Oconee Regional Medical Center, Plaintiff was diagnosed with "a fracture of the left nasal bone" and prescribed Azithromycin and Afrin pending further medical treatment. Id. at 23.

On December 6, 2010, after returning to Baldwin State Prison, Plaintiff had "another consultation with Dr. Ike Akunwanne because his eye is displaced, swollen, tender, and completely shut." Id. at 23-24. Despite being unable to fully examine Plaintiff's left eye due to its sensitivity, Dr. Akunwanne, who provided Plaintiff with medical treatment during his incarceration at Baldwin State Prison, requested an ophthalmology consultation on behalf of Plaintiff. According to Plaintiff, that same day, an examination was requested with Dr. Afolabi-Brown of the Medical College of Central Georgia.

On December 7, 2010, Plaintiff was referred to a plastic surgeon, and plastic surgery was scheduled to repair Plaintiff's fractured nose two days later. The next day, Plaintiff filed an informal grievance concerning the conduct of Officer Trawick and Officer Brown. On December 9, 2010, Dr. Afolabi-Brown performed "an open reduction and internal fixation" of Plaintiff's nose. Id. at 24. On December 21, 2010, Plaintiff reported experiencing double vision, and he was seen by a plastic surgeon once again. Id. at 25. On December 22, 2010, Plaintiff received approval for additional follow-up care with a plastic surgeon in three weeks. Id.

Based on the aforementioned factual allegations, Plaintiff's first amended complaint identifies the following seven causes of action: (1) deliberate indifference to Plaintiff's medical needs by failing to provide Plaintiff with adequate medical treatment sooner or failure to train or supervise Baldwin State Prison officials regarding the provision of medical treatment; (2) failure to protect Plaintiff from the unnecessary risk of harm posed by inmate Paris or failure to train or supervise Baldwin State Prison officials regarding appropriate safety precautions; (3) negligence of Officer Trawick and Officer Brown in violation of Georgia state law; (4) intentional infliction of emotional distress in violation of Georgia state law; (5) nuisance in violation of Georgia state law; (6) violation of O.C.G.A. § 42-5-2 for failure to provide adequate medical attention; and (7) violation of O.C.G.A. § 42-5-2 for failure to supervise or train and for inadequate policies, practices, or customs at Baldwin State Prison. Doc. 24 at 25-37. In relief, Plaintiff seeks damages in excess of $1,000,000.00, costs, and any other relief the Court deems just and proper. Id. at 40.

Defendants Sam Olens, Brian Owens, Lisa Pratt, Carl Humphrey, Doug Underwood, Nathan Handberry, Vanessa Butts-Hawkins, Richard Trawick, Johnathan Brown, Ike Akuwanne, and Sharon Hogan filed a pre-answer Motion to Dismiss. Doc. 21. Plaintiff responded to Defendants' Motion to Dismiss, and Defendants replied to Plaintiff's response. Docs. 25, 26.

Insofar as Plaintiff failed to properly serve Deputy Warden Underwood, Deputy Warden Handberry, Dr. Akuwanne, and Officer Trawick, these Defendants should be dismissed for insufficient service of process and lack of personal jurisdiction. Assuming for the sake of argument that service of process and personal jurisdiction were not at issue, Plaintiff nevertheless fails to state a federal constitutional claim upon which relief may be granted. In the alternative, Plaintiff's federal constitutional claims fail because Defendants are entitled to Eleventh Amendment immunity for claims against them in their official capacity, and because Defendants are entitled to qualified immunity for claims against them in their individual capacity. Because Plaintiff's federal constitutional claims are devoid of merit, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining Georgia state law claims.

A. Insufficient Service of Process and Lack of Personal Jurisdiction

If Plaintiff failed to properly serve process to Deputy Warden Underwood, Deputy Warden Handberry, Dr. Akuwanne, and Officer Trawick within the applicable time limit, the Court could dismiss these Defendants for insufficient service of process and lack of personal jurisdiction. According to Rule 4(m) of the Federal Rules of Civil Procedure, where the plaintiff fails to serve process within 120 days of filing the complaint and does not show good cause for his failure, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990). Even so, "a defendant must raise any challenge to the sufficiency of service of process in the first response to the plaintiff's complaint;

i.e., the defendant must include the defense in either its pre-answer motion to dismiss, or if no pre-answer motion is filed, then the defense must be included in the defendant's answer." Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments, 553 F.3d 1351, 1360 (11th Cir. 2008), citing Fed. R. Civ. P. 12(b), (g), (h).

In this case, Defendants originally challenged the sufficiency of service of process and the lack of personal jurisdiction in their pre-answer Motion to Dismiss. The Motion to Dismiss specifically contended that five Defendants—Deputy Warden Underwood, Deputy Warden Handberry, Dr. Akuwanne, Officer Trawick, and Officer Brown—were not properly served with process and that the Court lacked personal jurisdiction over these Defendants. Doc 21-1 at 5. In the reply brief in support of the Motion to Dismiss, Defendants conceded that Officer Brown "was served with process on October 3, 2012" but underscored that Deputy Warden Underwood, Deputy Warden Handberry, Dr. Akuwanne, and Officer Trawick were not yet properly served with process, thereby preserving their defenses of both insufficient service of process and lack of personal jurisdiction with regard to these four Defendants. Doc. 26 at 1.

After carefully reviewing the record, it appears that Plaintiff's attorney filed only two proofs of service within 120 days of Plaintiff filing his original complaint on August 23, 2012, which involved the summons issued for Attorney General Olens and Director of Risk Management Pratt. Docs. 17, 18. Plaintiff did not file proof of service for any other Defendants. Defendants, however, only challenge the sufficiency of service of process and the lack of personal jurisdiction with regard to Deputy Warden Underwood, Deputy Warden Handberry, Dr. Akuwanne, and Officer Trawick. Accordingly, insofar as Plaintiff failed to properly serve Deputy Warden Underwood, Deputy Warden Handberry, Dr. Akuwanne, and Officer Trawick,

the Court could dismiss these Defendants for insufficient service of process and lack of personal jurisdiction.[3]

B. Failure to State a Federal Constitutional Claim

*1. Applicable Legal Standards*

A complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, citing Twombly, 550 U.S. at 556. When considering a motion to dismiss for failure to state a claim, the Court must accept all allegations in the complaint as true, and the Court must construe the facts in the light most favorable to the plaintiff. Lopez v. Target Corp., 676 F.3d 1230, 1232 (11th Cir. 2012). The Court also must limit its consideration to the complaint and any written instruments attached as exhibits to it. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). It is well-established that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679, citing Twombly, 550 U.S. at 556.

---

[3] Similarly, because there is no indication in the record that Plaintiff properly served the remaining Defendants who are not parties to the instant Motion, namely, inmate Carlos Paris and "John Does 1-10," it may be appropriate to dismiss these Defendants without prejudice for failure to timely serve under Rule 4(m) of the Federal Rules of Civil Procedure. It also may be appropriate to dismiss Defendants "John Does 1-10" because "fictitious-party pleading is not permitted in federal court[,]" and because Plaintiff's first amended complaint fails to describe "John Does 1-10" with sufficient specificity to allow the Court to identify who these unnamed parties are and what role they played in this case. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).

*2. Plaintiff's Deliberate Indifference to Serious Medical Needs Claim*

The Eighth Amendment prohibits cruel and unusual punishment, which includes deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Nonetheless, not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. Id. "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotations omitted).

To establish deliberate indifference to his medical needs, a prisoner must satisfy both an objective and a subjective component. Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). Regarding the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). Regarding the subjective component, a prisoner must allege three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort claim, the prisoner must show that an injury was caused by the defendant's wrongful conduct. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

It is not enough to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The elements required to prove the subjective component of a deliberate indifference claim establish that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under

42 U.S.C. § 1983. <u>Taylor</u>, 221 F.3d at 1258. A prisoner also cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1576 (11th Cir. 1985). Such course of treatment claims, by definition, involve the "exercise of professional judgment" and as such are not actionable. <u>Estelle</u>, 429 U.S. at 105.

In this case, Plaintiff broadly alleges that his first federal constitutional claim is "pled against each and every one [of] these Defendants named in their official and individual capacities." Doc. 24 at 25. According to Plaintiff, all of the named Defendants acted with deliberate indifference by ignoring Plaintiff's serious medical needs, by failing to provide Plaintiff with adequate medical treatment sooner, and by failing to properly train or supervise Baldwin State Prison officials regarding the provision of medical treatment. <u>Id</u>. at 25-26. In his factual allegations, Plaintiff emphasizes that although the completed nursing assessment stated "send to ER," Plaintiff was escorted back to his cell, and not transported to the emergency room immediately. <u>Id</u>. at 22. Plaintiff's first amended complaint only mentions Officer Trawick, Officer Brown, and Dr. Akuwanne by name as part of Plaintiff's factual allegations from December 3, 2010, to December 22, 2010. <u>Id</u>. at 19-25. None of Plaintiff's factual allegations during this period reference Attorney General Olens, Commissioner Owens, Director of Risk Management Pratt, Warden Humphrey, Deputy Warden Underwood, Deputy Warden Handberry, Deputy Warden Butts-Hawkins, or Lieutenant Hogan. <u>Id</u>.

Plaintiff fails to state a plausible claim for relief regarding deliberate indifference to his serious medical needs because he does not allege facts sufficient to satisfy the subjective component of a deliberate indifference claim. Stated another way, Plaintiff does not allege specific facts to show that Officer Trawick, Officer Brown, Dr. Akuwanne, or any other named

Defendant: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) engaged in conduct that was more than mere negligence. McElligott, 182 F.3d at 1255. Nowhere in the first amended complaint does Plaintiff specifically allege who: (1) escorted Plaintiff to the prison medical center after he was attacked; (2) observed the evaluation of Plaintiff's medical condition by an unidentified nurse; (3) knew that the completed nursing assessment stated "send to ER;" (4) was informed by Plaintiff or the unidentified nurse that Plaintiff should be transported to the emergency room immediately; (5) refused to take Plaintiff to the emergency room; or (6) escorted Plaintiff back to his cell. As such, Plaintiff fails to allege sufficiently specific facts to allow the Court to infer that one or more named Defendants had subjective awareness of Plaintiff's objectively serious medical needs and that one or more named Defendants had an objectively insufficient response to Plaintiff's medical needs. See Farrow v. West, 320 F.3d 1235, 1245-1246 (11th Cir. 2003).

Plaintiff's first amended complaint, which implicates every Defendant without clarifying how or when each individual Defendant violated Plaintiff's federal constitutional rights, also ignores the established legal principle that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d. 1325, 1331 (11th Cir. 2008) (citations omitted). Here, Plaintiff fails to allege sufficiently specific facts to allow the Court to consider each individual Defendant's knowledge about Plaintiff's medical needs and the basis for his or her knowledge separately. Further, insofar as Plaintiff implies that he may have desired immediate transportation to the emergency room, rather than the medical treatment provided to him after the attack, such a course of treatment claim by Plaintiff, which involves the

exercise of professional judgment, does not amount to deliberate indifference to Plaintiff's serious medical needs. See <u>Estelle</u>, 429 U.S. at 105; see also <u>Hamm</u>, 774 F.2d at 1576.

Accordingly, even after accepting the factual allegations in the first amended complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff simply does not allege "sufficient factual matter" to state a deliberate indifference to serious medical needs claim that is "plausible on its face." <u>Iqbal</u>, 556 U.S. at 678.

### 3. Plaintiff's Failure to Protect Claim

"[P]rison officials have a duty [...] to protect prisoners from violence at the hands of other prisoners," but not every instance of violence between inmates "translates into constitutional liability for prison officials responsible for the victim's safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833-834 (1994) (quotations and citations omitted). It is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." <u>Id</u>. at 828. To be "deliberately indifferent," a prison official must have subjective knowledge of the risk of serious harm, and a prison official must fail to reasonably respond to the risk. <u>Id</u>. at 837-838. "Merely negligent failure to protect an inmate from attack does not justify liability under Section 1983 [...]. The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations and citations omitted).

In this case, Plaintiff broadly alleges that his second federal constitutional claim is "pled against each and every one [of] these Defendants named in their official and individual capacities." Doc. 24 at 28. According to Plaintiff, all of the named Defendants failed to protect Plaintiff from the unnecessary risk of harm posed by inmate Paris and failed to train or supervise Baldwin State Prison officials regarding appropriate precautions to keep Plaintiff safe from

harm. Id. In his factual allegations, Plaintiff emphasizes that neither Officer Trawick nor Officer Brown adhered "to applicable policies, procedures, and rules governing the transfer of prisoners" before inmate Paris attacked Plaintiff. Id. at 19. Plaintiff also summarily alleges that "Defendants were aware of Carlos Paris' violent nature and background as this was the basis for segregating this inmate from the rest of the prison population, where all of the inmates 'have assault histories.'" Id. As previously noted, Plaintiff's first amended complaint only mentions Officer Trawick, Officer Brown, and Dr. Akuwanne by name as part of Plaintiff's factual allegations from December 3, 2010 to December 22, 2010. Id. at 19-25. None of Plaintiff's factual allegations during this period reference Attorney General Olens, Commissioner Owens, Director of Risk Management Pratt, Warden Humphrey, Deputy Warden Underwood, Deputy Warden Handberry, Deputy Warden Butts-Hawkins, or Lieutenant Hogan. Id.

Plaintiff fails to state a plausible claim for relief regarding failure to protect because he does not allege sufficiently specific facts to demonstrate: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Purcell v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005) (quotations and citations omitted). Even if the Court assumes the existence of a substantial risk of serious harm and causation, Plaintiff fails to allege that Officer Trawick, Officer Brown, or any other named Defendant was "deliberately indifferent," meaning that one or more named Defendants had subjective knowledge of the risk of serious harm to Plaintiff posed by inmate Paris and that one or more named Defendants failed to reasonably respond to that risk. Farmer, 511 U.S. at 837-838. Although Plaintiff broadly alleges that every Defendant must have known about inmate Paris' propensity for violence because he was in segregation, this broad allegation does not provide a viable basis for the Court to separately consider each individual Defendant's knowledge about the risk posed by inmate

Paris to Plaintiff's safety and the basis for each individual Defendant's knowledge. See generally Burnette, 533 F.3d. at 1331. Similarly, although Plaintiff faults Officer Trawick and Officer Brown for their failure to follow unspecified regulations involving the transfer of prisoners, the mere failure to follow regulations is not cognizable under Section 1983 because violations of regulations are not equivalent to violations of the federal constitution or other federal laws. See 42 U.S.C. § 1983; see also Davis v. Scherer, 468 U.S. 183, 193-194 (1984).

"To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; [that is,] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-1320, quoting Farmer, 511 U.S. at 837. Nowhere in the first amended complaint does Plaintiff specifically allege that any particular Defendant was "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists" and that any specific Defendant also "drew that inference." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). As such, Plaintiff does not allege sufficiently specific facts to allow the Court to infer deliberate indifference with regard to any particular Defendant's alleged failure to protect Plaintiff. Moreover, Plaintiff does not allege sufficiently specific facts to allow the Court to infer that either Officer Brown or Officer Trawick failed to respond reasonably after inmate Paris attacked Plaintiff. See Farmer, 511 U.S. at 845 (explaining that "prison officials who act reasonably cannot be found liable."). Plaintiff's first amended complaint alleges that either Officer Brown or Officer Trawick "called 10-10 on my radio;" "got between the two [inmates];" "told inmate Paris to go back to his cell;" and "[inmate Paris] complied." Doc. 24 at 20-21; Doc. 24-3. Thus, Plaintiff's own factual allegations suggest that either Officer Brown or Officer Trawick acted reasonably, rather than unreasonably, after inmate Paris attacked Plaintiff.

Accordingly, even after accepting the factual allegations in the first amended complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff simply does not allege "sufficient factual matter" to state a failure to protect claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

### 4. *Plaintiff's Failure to Train or Supervise Claim*

Interwoven in Plaintiff's first and second federal constitutional claims is Plaintiff's related claim that Defendants "failed to properly train, staff, supervise, discipline, [or] provide for appropriate policies" at Baldwin State Prison. Doc. 24 at 26, 29. Although Plaintiff does not identify failure to train or supervise as a separate federal constitutional claim, any claim against any named Defendant in his or her supervisory capacity is not cognizable because supervisory officials cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A supervisory official is liable only "'when the supervisor personally participates in the alleged constitutional violation or when there is causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007), quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). When considering whether a causal connection exists between the supervisor's action and the alleged constitutional deprivation, mere knowledge of a potential constitutional deprivation is not sufficient to impose liability. Iqbal, 556 U.S. at 677. Instead, the plaintiff must allege some purposeful action by the supervisor to deprive the plaintiff of a constitutional right in order to state a claim against the supervisor. Id.

Because Plaintiff does not allege any personal participation by Attorney General Olens, Commissioner Owens, Director of Risk Management Pratt, Warden Humphrey, Deputy Warden Underwood, Deputy Warden Handberry, Deputy Warden Butts-Hawkins, or Lieutenant Hogan in either the physical altercation between Plaintiff and inmate Paris or the medical care received by Plaintiff after the attack, the relevant inquiry is whether Plaintiff alleges a sufficient causal connection between these Defendants' actions or inactions and the alleged constitutional deprivation suffered by Plaintiff. The allegations in Plaintiff's first amended complaint do not allege a sufficient causal connection for two reasons. First, Plaintiff fails to allege sufficiently specific facts to demonstrate that any particular Defendant instituted a custom or policy that resulted in deliberate indifference to Plaintiff's federal constitutional rights or that the facts support an inference that any particular Defendant directed his or her subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them. See West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007); see also Goebert, 510 F.3d at 1332 (explaining that "[d]emonstrating a policy or custom requires show[ing] a persistent and wide-spread practice."). Second, Plaintiff fails to allege sufficiently specific facts to demonstrate the existence of a history of widespread abuse of inmates at Baldwin State Prison sufficient to put any particular Defendant on notice of the need to correct the alleged constitutional deprivation and that any particular Defendant failed to do so. See West, 496 F.3d at 1328-1329; see also Hartley, 193 F.3d at 1269 (explaining that "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.").

Accordingly, even after accepting the factual allegations in the first amended complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff does not

state a plausible failure to train or supervise claim against Attorney General Olens, Commissioner Owens, Director of Risk Management Pratt, Warden Humphrey, Deputy Warden Underwood, Deputy Warden Handberry, Deputy Warden Butts-Hawkins, or Lieutenant Hogan to the extent that Plaintiff is attempting to proceed against these Defendants in their supervisory capacity as part of his first and second federal constitutional claims.

C.  Eleventh Amendment Immunity for Official Capacity Claims

Alternatively, insofar as Plaintiff is attempting to proceed against the State of Georgia, the Georgia Department of Corrections, the Georgia Department of Administrative Services, or any of the individually named Defendants in their official capacities, any such claim is barred by the Eleventh Amendment. The Eleventh Amendment prohibits federal courts from exercising jurisdiction over lawsuits against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. Lassiter v. Alabama A & M University, 3 F.3d 1482, 1485 (11th Cir. 1993). Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. Robinson v. Ga. Dep't of Transp., 966 F.2d 637, 640 (11th Cir. 1992). Thus, if the state has not waived its immunity, the Eleventh Amendment bars Section 1983 cases against the state. Cross v. State of Ala., 49 F.3d 1490, 1503 (11th Cir. 1995). By extension, the Eleventh Amendment also bars Section 1983 lawsuits against state officials sued in their official capacities, because in such cases, the state is considered to be the real party in interest since an award of damages would be paid by the state, and not the state official. Id. at 1503.

Here, the State of Georgia, the Georgia Department of Corrections, the Georgia Department of Administrative Services, and any individually named Defendants sued in their official capacity as state officials are protected by Eleventh Amendment immunity. The State of

Georgia expressly preserves its Eleventh Amendment immunity in the Georgia Constitution, Ga. Const. Art. 1, Sec. II, Para. IX(f), and as previously explained, any individually named Defendants sued in their official capacity as state officials are not persons. Accordingly, to the extent that Plaintiff is attempting to proceed under Section 1983 against the State of Georgia, the Georgia Department of Corrections, the Georgia Department of Administrative Services, or any of the individually named Defendants in their official capacity, any such federal constitutional claim is impermissible, and the Court could dismiss these Defendants on this alternative basis.

    D.  <u>Qualified Immunity for Individual Capacity Claims</u>

Insofar as Plaintiff is attempting to proceed against any of the state or prison officials named as Defendants in their individual capacities, Defendants are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trials [...] and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Santamorena v. Georgia Military College</u>, 147 F.3d 1337, 1339-1340 (11th Cir. 1998) (quotations and citations omitted). Stated another way, qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Oliver v. Fiorino</u>, 586 F.3d 898, 904 (11th Cir. 2009) (quotations and citations omitted). A government official acting within the scope of his discretionary authority is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." <u>Oliver</u>, 586 F.3d at 905. Courts need not consider the two prongs of the qualified immunity analysis in sequence, and a failure to

establish either prong requires the claim to be dismissed. Id., citing Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, Defendants are entitled to qualified immunity because the factual allegations in Plaintiff's first amended complaint do not establish a cognizable constitutional violation, and because the illegality of Defendants' actions was not clearly established at the time of the alleged violation. See Oliver, 586 F.3d at 905. A constitutional right can be clearly established only if "the contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violated that right." United States v. Lanier, 520 U.S. 259, 270 (1997). Based on the factual allegations set forth in the first amended complaint, it is impossible to conclude that Defendants would understand that what they did in this case violated Plaintiff's clearly established federal constitutional rights because preexisting case law does not demonstrate the apparent unlawfulness of Defendants' alleged actions or inactions. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.").

The Court need not inquire whether the Defendants' actions involved "ministerial" duties rather than "discretionary" duties, because there is no distinction between discretionary and ministerial duties in the qualified immunity context under federal law. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). Rather, it is only in the official immunity context under Georgia state law that the distinction between discretionary and ministerial duties becomes important. See generally Mann v. Taser Inter., Inc., 588 F.3d 1291, 1309 (11th Cir. 2009). As such, Plaintiff's reliance on the distinction between discretionary and ministerial duties under Georgia state law is unavailing. Accordingly, to the extent that Plaintiff is attempting to proceed

under Section 1983 against any of the state or prison officials named as Defendants in their individual capacities, the Defendants are protected by qualified immunity.

E. Plaintiff's Remaining Georgia State Law Claims

Because Plaintiff's Complaint fails to state a claim for relief under federal law, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining Georgia state law claims. It is well-established that the Court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when [...] the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (citation omitted). As discussed at greater length earlier in this Recommendation, it appears that certain Defendants should be dismissed for insufficient service of process and lack of personal jurisdiction. Plaintiff also fails to state a plausible claim for relief with regard to his only federal constitutional claims. In the alternative, it appears that Defendants are entitled to Eleventh Amendment immunity and qualified immunity. Where, as here, Plaintiff's federal constitutional claims are devoid of merit, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining Georgia state law claims. 28 U.S.C. § 1367(c)(3); Raney, 370 F.3d at 1089.

CONCLUSION

For the above-stated reasons, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 21) be **GRANTED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this the 25th day of April, 2013.

s/ Charles H. Weigle

Charles H. Weigle

United States Magistrate Judge